to lead to the U.S. Thanks. Thank you so much. Appreciate it. Thanks. And Mr. Sullivan, I see you in the second row. You deserve two minutes for rebuttal whenever you're set up there, you can begin. Thank you, Your Honor. May it please the Court. My name is Richard Sullivan. I represent Spencer Meads, the petitioner appellant in this case, and I submit this is a very interesting case. Obviously, the facts, which I won't go over again here, are very interesting, but legally, it's a very interesting and important case. At issue here is the breadth and application of the journalist privilege grounded in foundational principles of freedom of the press. So can I ask why we're dealing with the final order here? I beg your pardon, Your Honor? Can you explain to me why the district court's order adopting the special master's report recommendation was a final judgment order? Well, it was final because there was nothing further to be done in the district court. It was brought in the district court pursuant to these petitions. There's no pending criminal case, and in the nature of the legal principles, it's fundamentally different from the cases that are cited by the government. I understand you're distinguishing the cases they cite, but you also don't have a case where a court has found jurisdiction in this type of interlocutory posture. Well, Your Honor, I would submit the government would be the party seeking an exception to the rule that there is a final judgment here. There is a final judgment. The petitions were brought. The lower court did have jurisdiction over the petitions. I know that you cite a bunch of cases that stand for the general proposition that just because a privilege issue is being asserted here, there's a lot of law out there on that. Spencer, I think the case is, if I'm remembering correctly. There's a lot of law that just because someone is claiming that they're having to turn over something that's privileged doesn't mean that there's a right to interlocutory appeal. There's a lot of law that says that. You're arguing because this is a First Amendment issue that it's somehow different. What I'm suggesting to you is no court has made that distinction. That's my point. You have the burden, but they have cases that say generally a privilege. The fact that it's a privilege issue doesn't mean you get to run to the circuit. In another context, in the context of criminal law where say there's like a Fourth Amendment violation, criminal law is well established what the remedy is. There's the exclusionary rule. There's a fix for it. We're arguing here the government doesn't have the right to look at these communications within Project Veritas at all in the first place. That's a constitutional violation which is cemented once it occurs. So that's why we're saying that the cases they cite are not on point as far as the potential remedy in the event that... So you think it takes you out of standard drywall because it's a First Amendment claim. Is that correct? Yes, Your Honor. Okay, but then what is the irreparable harm that wasn't present in Mohawk Industries? Well, Your Honor, it's the same principle. We're out of the criminal law context. So if Mr. Meads is never charged, right, so there's no suppression or other sort of than you being here. Well, that's precisely right. The petitions allege the constitutional harm. The district court properly had jurisdiction. It ran its course. There's nothing left for the district court to do. The harm that we're talking about here is only remediable through this appeal. Can you explain to me why the district court... I think you got it wrong that we're under Gonzales. Is this the Gonzales standard here? Can you explain that? Yes, Your Honor. So that's, you know, when I refer to the interesting argument here, it's the journalistic privilege based in First Amendment, freedom of the press principles. I would argue for the court's submission there's a cloak of confidentiality which covers a broader scope of materials and communications than the government construes it as covering. Of course, there's two different standards. Petroleum products is the higher standard. Gonzales is the lower standard for non-confidential materials. Here the district court, following the special master, said everything is covered under the lower Gonzales standard rather than the higher standard. Our argument is that the higher standard should have been applied because the materials at issue are confidential. Now, that involves, as I said, construing a broader scope and by which that, I mean, if you look to the purpose of the journalist's privilege... How is it confidential? The district court concluded that because the sources had pled guilty, their status as sources had been disclosed. Some of the details regarding how it was obtained are all out there already. How is that an erroneous conclusion to say that this is, at this point, not confidential? Well, Your Honor, because the petitioners acted in reliance on this cloak of confidentiality, which they played a part in creating along with the source. So I think this is the legal principle I'd ask the court to recognize. Confidentiality is not just to protect the source. It's something that journalism in general relies on. The petitioners, you know, there's a... If it can be eviscerated by the actions of a third party, first of all, that would set the journalist's privilege apart from... It's not a third party. It's the source here. It's the source who has different interests than the journalist in coming together to create this privilege, which legally does belong... The idea of Gonzales is if the information is out there, whether it's the source who put it out there, some third party put it out there, whoever put it out there, that the importance of that privilege is greatly diminished because the cat is out of the bag. So why would we look at it differently? If it's out there, it's out there, right? Well, Your Honor, it's out there because... It's not that it has no protection. Obviously, Gonzales still has requirements, but why would we still look at it and give it the same heightened protection as if the source had never been disclosed? That would seem to me to be an unusual thing to do. Well, Your Honor, it's out there because of the actions of the government. So I respectfully submit it to the court, this way of proceeding whereby the government can essentially orchestrate a prosecution and then a plea deal of the source in order to look at the journalist's internal documents and so forth under a lower standard. I think that would be an offense to principles underlying our interest in a free press. One of the things that I'm struggling with is I don't... I would like for you to explain to me why you think the journalistic privilege even is triggered right now. Like, we have Bart and Nikki, and that is at the liability stage. So why are we even here on this issue? Well, we... There's no question the journalist's privilege applies. It's just a matter of which... whether it's the higher standard or lower standard. I think that's never been in dispute. It's, uh... Our argument is that the higher standard for confidential materials should apply, that the sources, Harris and Kurlander, did not have the ability to unilaterally eviscerate the privilege which belongs to the journalists. Other privileges, for example, the attorney-client privilege, the holder of the privilege is the only one who can... But you're asking us to overrule. We've concluded in other cases, Tracy, Cutler, that if the source discloses the information... Again, the privilege is different. Obviously, the reporter may hold the privilege, but this is just on the issue of whether it's public or not, whether it's confidential or not. In Tracy, it was disclosed by the source, in Cutler, it was disclosed by the source, and we still viewed it the same way. And you're asking us, I guess, to overrule those cases, which I don't think they're distinguishable. Maybe one was a grand jury investigation... Cutler was a grand jury investigation, right? There were reporters' notes, and they said, well, the source has made public statements. So how is that different from this case? Well, your Honor, I submit, Cutler and Cuthbertson's, which we cite on page 28, do support our position, which is that the privilege does belong to the journalist. It can't be... It's not purely something belonging to the source for the source's own reasons. Journalists have their own reasons, and society's reasons in general why... Doesn't that speak more to the privilege attaching at the immunity state, at the liability stage? I mean, because what I think Judge Bianco, and I don't want to put words in his mouth, is saying is that it's already out there. You're not retaining the information unless you want to protect yourself. And if it's... And you could protect yourself at the liability stage. You could say, if there was eventually an indictment, that it should be dismissed because of some qualified immunity, which you can then argue, is it higher or is it lower? But, like, doesn't the idea of whether or not there's even a... anything to protect and anything for you to hold turn on whether or not... on when the privilege becomes live at the immunity stage or somewhere else? I'm sorry, the liability stage or somewhere else? Let me try to answer Your Honor's question this way. So, I do think Bart and Nikki, once you... Bart and Nikki and the other cases in that line, obviously, are civil cases, you know, Russian Federation versus DNC, the WikiLeaks case and so forth. I do think at the criminal stage, in the hypothetical event this goes to a criminal prosecution down the road at some point, I think Bart and Nikki would preclude the possibility that there's any such thing as a crime of a journalist being... you know, possessing stolen goods in the form of documents or information that was stolen by some third party. For example, like if you look at the... The allegation here would be that the journalist was involved in the wrongdoing, right? That's the big difference. Bart and Nikki, there was no allegation it would actually... it was concluded that it had lawfully been obtained by the journalist, wrongfully obtained by the source, right? That's a big difference. This whole investigation is for the exact opposite. The magistrate judge already found probable cause that the crime was committed. Correct, Your Honor. We don't know on what basis though, to the extent the district court relies on the fact that there was a warrant issue. And the government cites Brandsburg, and they cite New York Times versus Gonzales for this proposition that in Brandsburg, the Supreme Court said it would be frivolous to assert that the First Amendment in the interest of securing news or otherwise confers a license on either a reporter or his news sources to violate valid criminal laws. So this idea that Bart and Nikki is somehow... gets a journalist completely off the hook even for purposes of an investigation. Forget about purposes of prosecution. It's just a search. Well, Your Honor, I would submit possibly if the journalist had actually been involved in stealing the materials, if you look at a case like the Pentagon Papers case, New York Times versus the United States, I think it would be manifestly offensive to the First Amendment to consider that the New York Times could be prosecuted for crimes such as possessing stolen property and, you know, if they can't even be held civilly liable for publishing materials that somebody else stole, it's not just a matter of certainly a matter of degree as well as qualitatively different, but you can't even be held civilly liable for possessing stolen property. I submit this is a road map for the government to follow in the future which presents grave jeopardy to the freedom of the press. I don't understand your suggestion that if a journalist violates the criminal law by breaking into a location with a source and stealing something and then publishing it, that somehow because they're a journalist, they'd be protected? Is that what you're suggesting? Not at all, Your Honor. If it was the case that the journalist actually stole something, that's different. So what if they're investigating that? What if they're investigating whether there was a conspiracy to steal? That's what they're investigating, right? Well, Your Honor, all but very few documents post-date what's agreed to be the latest date by which any documents came into the possession of Project Veritas. You don't think there could be more realization of a conspiracy after the property was taken? That there could be documents that reveal an agreement before? Just because the documents are after? Well, Your Honor, I would submit that Bart and Nikki covers things that go past the actual theft of documents by the journalist. Anything that's like a conspiracy or misprision of felony or however, any other other crimes that wouldn't by the terms of Bart and Nikki, which Bart and Nikki would relieve of civil liability, I think the same principles would apply so that in the future, hypothetical prosecution, they couldn't be prosecuted for possessing stolen property. I have one very sort of practical, factual question. I think there are 943 documents that the Special Master determines are responsive. All of the petitioners below challenge that ruling, right, by the Special Master? Yes, Your Honor. Only Meade's is on appeal? Correct. I'm trying to figure out, are all 943 of those from the search of his home or not? Seems like not because all of the petitioners, the four petitioners, all challenge that, but I'm trying to figure out how Meade's would have standing to challenge the disclosure of documents seized from someone other than him. Well, Your Honor, as to standing at the as of the time that the petitions were brought, certainly all the petitioners were We're here now. So only Mr. Meade's is here. We have a corpus of 943 disputed documents and I think that, I can't tell entirely, but it looks to me like that 943 is called from all of the searches as opposed to only the searches of Mr. Meade's property. Is that right? I believe that's correct, Your Honor. It comes from the three different locations. However, the communications are generally multiple people in all the communications. Attorneys for Project Veritas, the different members of Project Veritas, different sources, including sources other than Harris and Kurlander, obviously. No, I understand, but if this, instead of 934 in one batch, we had three sets of 300 documents each. One from Meade's, one from Petitioner 2 and one from Petitioner 3. Meade's would only be able to challenge his 300 up here on appeal by himself. If it was the case that there was a clean way to parse that out, then that may be the case. I'm not sure that that's possible. I don't know. Nobody's I know it hasn't been raised. What about the attorney-crime privilege issue, though? Doesn't Project Veritas have to be the one challenging the attorney-crime privilege ruling? Well, Your Honor, all the petitioners raised it at the time that it was raised in front of the district court. Correct, Your Honor, but we are on appeal from the district court's order. She analyzed it as you know, when she looked at the attorney-client issue, she was looking at it under that lens. All right. Thank you. May it please the court, my name is Robert Sobelman. I represent the United States on this appeal and in the district court below. I will turn to jurisdictional issue first and then the merits unless the court prefers otherwise. With respect to the jurisdictional issue, the district court's order is not a final decision for the purposes of Section 1291. The lack of jurisdiction follows from the Supreme Court's decision in Dabella. The circumstances are different but indistinguishable and in Dabella, the Supreme Court made clear that a pre-indictment appeal like this one would be an instrument of harassment and jeopardizing by delay the availability. Just to follow up on Judge Miriam's questions earlier there could be an exception when there's a First Amendment issue like this with a journalism privilege question because if there's never there's going to be no way for this for them to obtain relief because it's not going to necessarily come up in the criminal prosecution there may never be a criminal prosecution and obviously when you're trying to protect a source you can't go back in time so why when it's a First Amendment related privilege couldn't there be an exception? I didn't see any case that addresses that, right? No, Your Honor, there's no Fourth Amendment, attorney-client privilege where if they use attorney-client privilege documents you get convicted, the conviction gets overturned but this is a little bit different than that, right? Your Honor, we think the same principles apply it's the same in the Fourth Amendment context the Fifth Amendment context, the Sixth Amendment context attorney-client problem If there's never a charge here how would they ever vindicate what they say is a violation of their First Amendment right to keep their sources, their journalistic information confidential? Your Honor, the Supreme Court encountered this in Mohawk with the attorney-client privilege which is also a very substantial privilege and actually is essentially unqualified unlike this privilege where there's a variety of showings My example to you is that could get vindicated in a criminal case because if the government in fact uses that the conviction could get overturned. The same would happen here, Your Honor if the government is able to review and use the responsive materials in the course of the prosecution and on appeal from a final decision in that prosecution the appellate court found that the district court had abused its discretion in finding that the privilege did not apply, then this court would implement whatever remedy it sought. But there's no case either way on First Amendment related privilege, correct? That's the government's understanding in this kind of context. I'll note that of course this court's never found conclusively that the qualified journalist's privilege is actually acquired under the First Amendment. It's a common law privilege similar to the attorney-client privilege, not a constitutional privilege. Let me just ask you on page 25 of your brief you made an argument that I guess you didn't make below that I just want you to explain to me that qualified journalist's privilege does not extend to material seized pursuant to a search warrant, period. Isn't that pretty drastic a position for the government to take that just because a search warrant a magistrate judge or judge authorized a search warrant that somehow he can't assert the privilege because it's a government investigation? No court has ever said that, right? No court has also ever found that the privilege was implicated in this type of situation. But the context is a little narrower here. This is not simply that a search warrant was issued for some materials. The search warrant supports probable cause and the special master and the district court also found this that Meads himself committed a crime. It's not as if The search warrant is there's probable cause to believe that this search will locate evidence that a crime has been committed. That is correct. And that's what I'm distinguishing from the rule that I think Judge Bianco understood we might be asking for which is in any case where a search warrant is issued for some material the privilege can't be asserted. That's not a question this court has to answer. The question this court has to answer is where the subject of an investigation is being searched and the government has shown probable cause that the subject of the investigation has engaged in a crime which is what the special master and the district court found after reviewing the affidavits submitted in furtherance of the search warrant can the privilege be asserted and the government respectfully takes the view that it cannot. Does it have to be that the probable cause is to believe the crime was related to his journalistic activities or are you suggesting that if he's accused of stealing something from a friend and the search comes up that he can't assert the journalistic privilege say by the way in my email you're also going to find stuff related to my journalism. I think Judge Bianco is pointing out and I noticed the same thing that that is a very blanket bold statement. It's just if there's a search warrant on probable cause, no. That sounds a little extreme. And that's not what the government's argument is and as I just explained it's much narrower than that and I would point out that the warrant, the take from the warrant, the response of materials to a warrant are limited to what is of course in the warrant. The categories of evidence that are listed. And here the categories of evidence are narrow. They are tailored to the crimes under investigation. If a warrant were served on a journalist for activities that were entirely unrelated to their employment similarly the government would only be able to obtain to actually seize the items that are responsive to their search warrant which presumably in the court's hypothetical wouldn't include anything related to their employment. But here where Mr. Meads has the burden to show that the privilege applies he of course has not identified a single case where the privilege has been implicated and both Brandsburg and Gonzalez made clear that that unlike in the other situations where the courts apply the privilege there is a situation here where the government is investigating the petitioner and all of the cases where the qualified journalist privilege has been applied are cases where a journalist is a third party and the concern is that the government is going to use the journalist as an investigative arm of the government to figure out who their sources are. It could be a little more complicated because you could have someone who's part of some entity who may be under investigation who may have a probable cause to a search warrant but then you're going in and you're searching everything that journalistic news organization has. I'm a little concerned this idea that even if you have probable causes to a target that somehow everything within that search somehow can't be any privilege because someone has done something wrong. Wouldn't that be a problem if you have a big organization but there's one reporter and you're searching all the materials that organization because it's a bad actor? Yeah, your honor, obviously that's not the situation we find ourselves in here. Here there was a robust process put in place by the district court and the responsive materials at issue all relate directly to the conduct that's under investigation and that are responsive to the warrant so it's a different situation. Let's assume we're going to go with Gonzales. Can you address these arguments of why the district court erred in its application to Gonzales? Yeah, your honor, I'll skip over the argument we made in the brief that the court hasn't asked about that Mr. Meads and his co-petitioners actually waived the  but I can address it if the court wishes. The district court and the special master both did not address that, right? They didn't reach the argument. The special master called it a quote serious argument and I think made some statements describing the argument after reviewing the responsive materials which of course the government's investigative team has not reviewed indicating that it almost certainly would be a successful argument but it didn't reach it in light of making the finding on the merits. With respect to the confidential versus the non-confidential test for the documents pertaining to sources which the government understands from the special masters and district court's opinions is a very narrow set of the documents none of them were confidential in light of Harris and Kurlander's guilty pleas. There's nothing about the fact that it was a guilty plea versus a public statement versus an interview that renders it different. In Chevron Corporation this court held that disclosure is only confidential where it would force the press to breach a promise of confidentiality that's not present here because Harris and Kurlander pled guilty and acknowledged their roles and indeed as has been made public before Kurlander is cooperating with the government in that investigation. Similarly in Gonzales the court held that the confidential test only applies where the protection of confidential sources is involved that's just simply not the case here given the timeline of events and what's come to pass. One of the arguments they make is that in terms of at least some of the materials that there could be other sources within those materials who have not been publicly revealed and that the district judge and the special master did not sufficiently screen for that. What's your response to that? The government's investigative team of which I'm a part is a little bit disadvantaged in responding to this argument as opposed to the filter team who has reviewed the documents. From what the government can tell the special master and the district court engaged in a very thorough analysis of the objections of the documents and it is difficult to believe that there are other actual confidential sources as opposed to maybe other third parties or individuals who might be mentioned or have been communicating with them particularly given the government's understanding of the facts of what occurred based on our investigation and prosecution of Ms. Harris and Mr. Kurlander. Alright. Thank you. Thank you. Thank you. So just to reiterate my view is that the government does apply an overly narrow view of what should be considered confidential information or communications. It's not just things that are said that are supposed to be secret by sources who are currently unknown. It's things that the journalist needs to be confidential for their purposes that are generated in reliance on this cloak of confidentiality and that's in the broader interest of journalism. I submit this should be understood as a First Amendment privilege and not just a common law privilege. We do we don't brief that extensively but this court does something this court has not not reached one way or the other. I submit the greater persuasive argument is in the favor of understanding it as part and parcel of the First Amendment. In any event the underlying concerns whether it's a long standing common law privilege or grounded in the First Amendment all the cases talking about why we have the privilege talk about it as something belonging to the interest of the public as a whole. I think it was something the great liberal the justices of the Supreme Court have all come down if you look at the Petroleum or excuse me the Pentagon Papers case I think it was Blackmun in his concurrence where he described it as something belonging not to the government but to the governed for their interest in a free press. So I think that's the principle and we need to look to the principles it's meant to serve in order to discern the application. Now as far as the fact that there was a search warrant I think the government relies too much on this as did the district court we don't know what the affidavits were presented we don't know yes there was a search warrant the affidavits were examined by a magistrate but we don't know if they were even identified as journalists to what extent did the magistrate take any of these First Amendment considerations into their analysis. I'll wrap up with the application of Gonzalez or Petroleum Products I think if it's the higher standards manifestly not met here where these materials are essentially essential to a claim there's not even a claim they talk about an investigation in their brief even if it's the lower standard the district court didn't even address the obtainability prong I'll note the government had subpoenas that the petitioners didn't know about something like a year ahead of the execution of the search warrants they got all kinds of data from Meta, Apple Microsoft Uber, etc. The district court didn't obtainability the district court said the fact that the journalists have the documents makes it significant it's on page 17 of the opinion obtainability the court disagrees that it's the same as getting it from another source whether the evidence is on petitioners devices is relevant to the knowledge and intent of the journalist I agree with it but certainly there was a finding I misspoke, I certainly don't want to say that the district court didn't address something when they did if I missed Why is it significant not just that the information is out there but that the journalist who is under investigation has it Well, so the subpoenas which the government had which the petitioners didn't become aware of until the special master's review was underway so likely relevance somewhat easier but obtainability all of these things could very well be redundant materials that they have anyway Thank you, we have the arguments Thank you